IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | Chapter 13 |
| RICHARD WAYNE SMITH, JR., | * | |
| ROBIN ANNETTE SMITH, | * | |
| Debtors | * | Case No. 1-03-07451 |
| | * | |
| KARA KATHERINE MESSNER, ESQUIRE | * | |
| LAW OFFICE of DOROTHY L. MOTT, | * | |
| ESQUIRE, | * | |
| Applicant | * | |
| | * | |
| v. | * | |
| | * | |
| COMMERCE BANK/HARRISBURG, N.A. | * | |
| Objectant | * | |

## OPINION

Before the Court is a fee application filed by Kara Katherine Messner, Esquire and the Law Office of Dorothy L. Mott, Esquire ( collectively "Mott"), counsel for Richard and Robin Smith ("Debtors"). Commerce Bank/Harrisburg, N.A. ("Commerce") objected to the application alleging that some of the fees sought by Mott were unreasonable and excessive and were not intended to benefit Debtors' estate. For the reasons set forth below, I will sustain the objection in part and deny it in part.

### Procedural History

On December 18, 2003, Mott prepared and filed a Chapter 7 petition on behalf of Debtors. The Rule 2016(b) Statement she submitted in connection with the filing of the case disclosed that Debtors had agreed to pay her $800 for services to be rendered in connection with

1

the case.[1]  Mott prepared and filed Debtors' schedules in which a 1998 Skyline mobile home was listed as an asset of Debtor Richard Smith ("Smith").  The mobile home, which was valued at $44,000.00, was reported to be collateral for a loan extended by Commerce.  After their petition was filed, Debtors informed Mott that the mobile home was not owned solely by Smith, but was jointly owned by Smith and his father.  Mott also discovered that Commerce had not perfected its security interest in the home.  After making this discovery, amended schedules were filed to delete Commerce from the schedule of secured creditors and to move it to the schedule of unsecured creditors.  Thereafter, a flurry of motions ensued.

On May 3, 2004, Messner filed a motion under 11 U.S.C. §522(f) to avoid Commerce's lien on the mobile home.  On May 10, 2004, Debtors amended their schedules to exempt Smith's one-half interest in the mobile home, which they valued at $35,000.00.[2]  On May 25, 2004, Commerce filed an objection to the amended real estate exemption and a motion for relief from the stay.  On June 2, 2004, Debtors answered the motion for relief and five days later moved to convert their case to Chapter 13.  The case was converted on June 9, 2005.

After Debtors filed their Chapter 13 plan, Commerce filed an objection, and Debtors responded with an objection to Commerce's proof of claim.  At a hearing held on October 26,

---

[1]The Rule 2016(b) Statement provided that:
" . . . the compensation paid shall include the following legal services: (a) all conferences with the Debtor; (b) Preparation of Petition and Schedules; (c) Attendance at 341 First Meeting and attendance at reaffirmation and/or confirmation hearings; (d) Preparation of routine motions.  Attorneys fees for Chapter 7 are $650 if paid by the date of the meeting of creditors; $800 if paid in installments."

[2]The reason for this precipitous decline in value is not of record, but Commerce does not challenge this valuation.

2

2004, Mott moved to join the Chapter 13 trustee as an additional objectant on the objection to Commerce's proof of claim.³

On December 6, 2004, a hearing was held on Commerce's objection to Debtors' plan. At the hearing, Debtors were ordered to file an amended plan settling all outstanding issues with the Trustee and Commerce regarding the mobile home, the plan and the exemptions. On January 10, 2005, a stipulation resolving Commerce's objections to exemptions and to the plan, Debtor's objection to Commerce's proof of claim, and the Trustee's objection to the amended plan were filed. The Trustee withdrew his objection to the amended plan the next day.

On January 31, 2005, Mott filed a document entitled "Supplemental Interim 2016(b) Statement" requesting additional fees of $3,830.50 and expenses of $24.20 in addition to the "flat fee agreement" amount of $2,500. On February 10, 2005, Mott withdrew the "Statement" and filed a revised application requesting additional fees of $9,440.50 to which Commerce filed an objection. A hearing was held on March 10, 2005, and the parties filed briefs thereafter. The matter is ready for decision.⁴

## Discussion

As the Procedural History indicates, the background for the instant decision includes a number of interrelated motions. Much of the activity in the case stemmed from the erroneous

---

³Debtors' Motion to join the trustee was made in response to the Court's observation that it was unclear whether a Chapter 13 debtor could exercise a trustee's strong arm powers to avoid a voluntary lien. *See* 11 U.S.C. §522(h).

⁴I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. These matters are core pursuant to 28 U.S.C. §157(b)(2)(A),(K) and (O). This Opinion and Order constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052.

3

information in the original schedules that Smith alone owned the mobile home in which Debtors resided. When it was brought to Mott's attention that the home was jointly owned with Smith's father, Debtors filed amended schedules to report the newly-discovered status of this significant asset. After Mott discovered that Commerce did not have a perfected security interest in the mobile home, further motions and amendments became necessary. The amended fee application filed by Mott asserts that these additional motions and amendments caused her firm to expend time that it had not anticipated spending when the Chapter 7 petition was filed or when the case was converted to Chapter 13. Commerce alleges that the requested fees are excessive and unreasonable because the additional work performed was not complex. Commerce also alleges that the fees were artificially increased by Mott in retaliation for a telephone call from Commerce's counsel expressing concern regarding the amount of the first fee application. The evidence adduced by Commerce consists of the fee applications themselves, which the Court has closely reviewed.

      a.      *Mott's Fee Disclosures and Fee Applications*

As stated previously, Mott filed a statement under Rule 2016(b)[5] when she filed the Chapter 7 petition to disclose the terms of the firm's retention. An amended Rule 2016(b) Statement, however, was not filed when the case was converted. It was not until Mott filed her request for the payment of additional fees that she filed a "Supplemental Interim 2016(B)(1) Statement" ("Supplemental Statement"). The Supplemental Statement disclosed that Debtors and

---

[5] 11 U.S.C. §329 and Fed.R.Bankr.P. 2016(B) require a debtor's attorney, within fifteen days of the order for relief, to file a disclosure of the amount of compensation that has been or will be received in consideration for services rendered in connection with the bankruptcy case.

4

Case 1:03-bk-07451-MDF    Doc 107    Filed 08/29/05    Entered 08/30/05 10:39:11    Desc
Main Document      Page 4 of 18

Mott had entered into a "flat fee agreement" for $2,500 in fees, but did not describe what services would be provided under the terms of this agreement.[6]

Mott's application consists of a cover sheet and seven pages of time entries. The time entries for each application provide information under columns labeled "Date," "Timekeeper," "Hours," "Rate" and "Charge." The first 31 time entries cover the period from January 7, 2004 to June 8, 2004, which coincides with the time during which the case was being administered under Chapter 7. The January 31, 2005 fee application, which Mott withdrew, stated that Mott was not charging the Debtors for services rendered while Debtors were in Chapter 7. However, in the February 10 fee application, Mott requested fees for services that were listed as subject to "no charge" in the first application. Mott did not state any reasons for withdrawing the January 31 fee application when she filed her praecipe to withdraw, and she offered no explanation in her brief.

In its brief, Commerce speculates that the new fee application was filed in retaliation for a telephone call that counsel for Commerce made to Mott requesting that she reduce the amount of the fees she was seeking in the January 31, 2005 application. Commerce postulates that because attorneys fees have priority over payments to unsecured creditors such as Commerce, Mott's reason for seeking the increased fees was to deprive Commerce of any significant distribution in the plan as Debtors' largest unsecured creditor.

---

[6]Although it is unclear from the record, it appears that Mott never received the $800 fee disclosed in the first Rule 2016(b) statement. The Court assumes that the $2500.00 flat fee was intended to replace rather than supplement the $800 fee.

### b. General Considerations for Examining Fee Applications

Ordinarily, the fee applications of debtors' counsel, like any other fees in bankruptcy, are examined for their reasonableness and necessity under 11 U.S.C. §330 and not for the motive for the application. The Court has not discovered, and Commerce has not cited, any cases which specifically state that counsel's motives in filing a fee application are to be considered when determining the reasonableness and necessity of fees. Nonetheless, it is clear that the amount that a court should allow for compensation of debtor's counsel "is not limited to the determination of a reasonable fee by arithmetic calculation." *In re Martin*, 197 B.R. 120, 126 (Bankr. D. Colo. 1996).

"It is well established that 'those seeking compensation for professional services rendered . . . on behalf of a debtor's estate bear the burden of proof in establishing the reasonable value of their services.'" *In re White*, 171 B.R. 554, 555 (S.D. Miss. 1994) (citations omitted). A bankruptcy court has an independent duty to review any fee application, even in the absence of an objection from an interested party. *In re Busy Beaver Building Centers, Inc.,* 19 F.3d 833, 841 (3rd Cir. 1994). "Broad discretion is vested in the court to conduct such review." *In re Evans,* 281 B.R. 552, 554 (Bankr. M.D. Pa. 2001) (citing *In re Lan Assocs., XI, L.P.,* 192 F.3d 109, 122-123 (3d Cir. 1999)). However, in setting an attorney's fee, the Third Circuit has suggested that a bankruptcy court should not become "enmeshed in a meticulous analysis of every detailed facet of the professional representation." *Busy Beaver.* 19 F.3d at 844-45 (citing *Lindy Bros. Builders, Inc. v. American Radiator & Std. Sanitary Corp.,* 540 F.2d 102, 116 (3d Cir. 1976)). "Because its time is precious, the reviewing court need only correct reasonably discernible abuses, not pin

6

down to the nearest dollar the precise fee to which the professional is ideally entitled." *Busy Beaver,* 19 F.3d at 845.

A court's "overriding obligation" when examining a professional's fee application is to "'protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors.'" *Busy Beaver,* 19 F.3d at 844. *See also In re Truong*, 259 B.R. 264, 267 (Bankr. D. N.J. 2001) ("bottom line consideration" should be whether fee is fair; both to professional whose fee is sought, as well as to debtor and creditors). In awarding fees, a bankruptcy court is interested in not only adequately compensating attorneys in order to encourage competent counsel to choose bankruptcy as an area to practice, "but in insuring that the costs of administration do not consume all of the assets that would have been available to creditors." *In re Columbia Plastics, Inc.*, 251 B.R. 580 (Bankr. W.D. Wash. 2000). In making a fee determination, the court must take into consideration whether the professional exercised "reasonable billing judgment." *In re Grosswiler Dairy, Inc.*, 257 B.R. 523, 528 (Bankr. D. Mont. 2000); *In re Mednet*, 251 B.R. 103 (9th Cir. BAP 2000). "The court's responsibility to protect the estate is especially important in chapter 13 cases where there is little motivation for a debtor, or creditors, to object to a particular fee allowance." *In re Szymczak,* 246 B.R. 774, 778 (Bankr. D.N.J. 2000).

To determine the amount of reasonable compensation under 11 U.S.C. §330, a bankruptcy court should consider "the nature, the extent and the value of such services, taking into account all relevant factors," including but not limited to the amount of time spent, whether the amount of time spent is reasonable in light of the "complexity, importance and nature" of the case, the rates being charged by the movant, the rates charged for similar services by other

practitioners, and the necessity and benefit of the services to the estate. 11 U.S.C. §330(a)(3)(A) - (E). Further, in a Chapter 13 case, reasonable compensation may be allowed for representing the interests of the debtor in connection with the case. 11 U.S.C. §330(a)(4).

The calculation used most frequently by courts to determine reasonable compensation is the number of hours expended multiplied by the hourly rate. See *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983). This approach is referred to as the lodestar method. But as has been noted by several bankruptcy courts, the lodestar is nothing more than an attempt to assign a market rate. The use of a lodestar in Chapter 13 cases may be misleading if attorneys practicing in the market typically charge a flat rate. *In re Argento*, 282 B.R. 108, 116 (Bankr. D. Mass. 2002); *Szymczak*, 246 B.R. at 779; *In re Patronek*, 121 B.R. 728, 731-32 (Bankr. E.D. Pa. 1990); *see also In re Eliapo*, 298 B.R. 392, 399 (9th Cir. BAP 2003). This approach has been validated by the Third Circuit Court of Appeals, which noted in *Busy Beaver*, 19 F.3d at 856, that Section 330 " by no means ossifies the lodestar approach as the point of departure in fee determinations."

      1.    <u>Flat or no-look fees</u>

The volume of Chapter 13 cases has risen sharply while the preparation of petitions and accompanying documents has become more routinized and automated. Most services required of an attorney in a Chapter 13 case may be characterized as "normal and customary." *In re Shamburger*, 189 B.R. 965, 969-70 (Bankr. N.D. Ala. 1995); *see also Szymczak*, 246 B.R. at 780. Accordingly, some courts have adopted local practice orders or rules permitting attorneys to be paid presumptively reasonable and standardized fees for basic legal services without filing a fee application. *See generally*, Keith M. Lundin, *Chapter 13 Bankruptcy* § 294.1(3d ed. 2002)(cited

in *Eliapo*, 298 B.R. at 394). Use of a flat fee is an attorney's offer to provide basic services for an agreed amount in exchange for receiving compensation without the necessity of filing a fee application. Because a fee application is not required if a flat fee at or under the presumptive amount is charged, practitioners often refer to these arrangements as "no-look" fees. *See, e.g.*, *In re Wright*, 290 B.R. 145, 147 (Bankr. C.D. Cal. 2003).

Although the use of a presumptive flat fee conserves judicial resources and rewards efficient practitioners, its use engenders new dilemmas. Typically, courts have confronted two resultant issues if they establish "no-look" fees. First, a court must establish a reasonable fee for normal and customary services, otherwise attorneys will obtain a windfall if the fee is too high or will routinely file additional fee applications if the fee is too low. *See Szymczak*, 246 B.R. at 781. ("In establishing what a reasonable fixed or flat fee should be, the court should be guided by those fees typically charged by attorneys who regularly practice in the bankruptcy court's jurisdiction.") Second, the court must establish a procedure for compensating attorneys who perform reasonable and necessary services that are not routine. *See id.* at 782. ("Any work provided by chapter 13 debtors' attorneys that exceeds the normal and customary, should be calculated using the conventional lodestar method.")

In setting a court-approved flat fee for Chapter 13 cases, some courts have developed concomitant standard services that attorneys are expected to perform to earn the fee.[7] In several

---

[7]*See Guidelines for Compensation for Professional Services or Reimbursement of Expenses by Attorneys for Chapter 13 Debtors Pursuant to Local Rule 2016-1(B)(2)(a)*, United States Bankruptcy Court, Southern District of Florida *available at* www.flsb.uscourts.gov. (Base fee of $2,500 is presumed to compensate attorney for specified minimum services.); *Court Procedures Manual of the United States Bankruptcy Court for the Western District of Pennsylvania* as amended May 3, 2005, Procedure #3 *available at* www.pawb.uscourts.gov. (Maximum fee in Chapter 13 cases is presumed to be $2,000 and contemplates that certain

jurisdictions in California and in the Northern District of Georgia, use of a no-look fee is contingent upon the execution of a "Rights and Responsibilities" form in which both the attorney and the client pledge to perform certain duties. *See, e.g. Eliapo*, 298 B.R. at 401, fn. 15. Other bankruptcy courts specify a maximum that an attorney filing a Chapter 13 may charge without filing a fee application, but do not specifically state what services must be provided to earn the fee.[8] The Court reviewed the policies adopted in other jurisdictions and found that "no-look" fees ranged from $1600.00 to $2500.00 for customary Chapter 13 services.[9] Regardless of

---

specified services will be provided.); *Eliapo*, 298 B.R. at 401, fn. 15 (Fee guidelines established by Northern District of California bankruptcy court sets presumptive fee of $1,400 for a "basic case" and incorporates standard services in a "Rights and Responsibilities" form); General Order No. 9 (September 8, 2003), United States Bankruptcy Court, Northern District of Georgia *available at* www.ganb.uscourts.gov. (Payment of fees allowed without fee application and hearing where attorney and debtor agree that the fee will be less than $2,501 and attorney agrees to perform all duties set forth in "Rights and Responsibilities" form.)

[8]*See Argento*, 282 B.R. at 115-16. (In Massachusetts, a Chapter 13 debtor's attorney is not required to file an application "if his fee is not challenged or he is not ordered to do so unless (i) the total amount the attorney received or is to receive for services rendered prior to confirmation aggregate to more than $2,500 or (ii) the total amount for all services rendered after confirmation exceed $500.); Local Rules of Bankruptcy Practice for the United States Bankruptcy Court for the District of New Jersey, Rule 2016-1(j)(2) *available at* www.njb.uscourts.gov. (Application for compensation required for Chapter 13 attorneys fees in excess of $2000)*; Manual for Practitioners*, United States Bankruptcy Court, Central District of Illinois, revised July 2005 *available at* www.ilcb.uscourts.gov. (The "review level" for attorneys' fees in Chapter 13 cases is set at $2,000 for cases filed on or after January 1, 2005.); *Amended Order on Compensation of Debtor's Attorney in Chapter 13 Cases (Effective August 4, 2003)*, United States Bankruptcy Court, Middle District of Alabama *available at* www.almb.uscourts.gov. ("A fee of $1,600.00 is presumed to be the maximum reasonable compensation and may be awarded for all legal services rendered in a chapter 13 case for an attorney for the debtor.")

[9]Rather than establish one flat fee, the Chapter 13 Payment Guidelines for the Northern District of California set a range of no-look fees – $1400.00 for a "basic case" with incremental increases based upon the presence of additional factors. For example, an attorney filing a Chapter 13 case for a debtor with mortgage and tax claims would be entitled to the basic no-look fee of $1400.00 plus an additional $1150.00 because the case included claims of these types.

10

Case 1:03-bk-07451-MDF    Doc 107    Filed 08/29/05    Entered 08/30/05 10:39:11    Desc
Main Document    Page 10 of 18

whether the court specifies which services are to be performed in order to earn the flat fee, there is an expectation that the amount of the fee will be sufficient to fairly compensate a competent attorney for rendering services routinely performed in a typical Chapter 13 case. The flat fee is not intended to serve as a retainer against which an attorney charges time expended until the retainer is exhausted, followed by an application for compensation for any remaining unpaid services.

When attorneys use a no-look fee, they must expect that certain cases will yield, due to unforeseen complications, a lower return than cases that proceed in a routine manner. Events which demand that counsel render services that were not anticipated at the commencement of the case may be excluded from the no-look fee upon proper notice to the client. However, any flat fee agreement should be sufficient to secure the results in a routine case for which the attorney was retained. For example, flat fees of $2,500.00 in a Chapter 13 case should include the services necessary to confirm the plan in a routine case. If the plan prepared by the attorney does not commit all of the debtor's disposable income to the plan, the Chapter 13 trustee will file an objection. An attorney in this situation should not expect to receive additional compensation for the preparation of an amended plan. However, if an attorney discloses to the same client that student loans are generally non-dischargeable and that pursuit of a hardship discharge will not be included in the flat fee, it is appropriate for an attorney to seek additional compensation for these extraordinary services.

In the instant case, Mott's application states that "Debtor and counsel entered into a flat fee agreement for $2,500.00 for which debtor's counsel filed a 2016(b) statement." The Court assumes that the agreement to accept a flat fee was entered into at or about the time the case

11

Case 1:03-bk-07451-MDF    Doc 107    Filed 08/29/05    Entered 08/30/05 10:39:11    Desc
Main Document    Page 11 of 18

converted from Chapter 7 to Chapter 13. Although the Court accepts Mott's representation that a new fee arrangement was agreed to by the parties, the Court is not privy to its terms since a revised disclosure under Rule 2016(b) was not filed.[10] Therefore, the only agreement on the record is the amount of the fee. No disclosure was filed describing what services would be performed for the flat fee of $2,500.00.[11]

In this District, the Court has not established a flat fee in Chapter 13 cases either through the local rules or by order. However, the Chapter 13 trustee for the district has set a policy that a debtor's attorney may receive fees of $2,500.00 or less without filing a fee application. Consequently, the Court has observed that many practitioners, Mott being among them, have adopted $2,500.00 as their standard fee. Therefore, the Court must determine which of the time entries set forth in Mott's application may be described as normal and customary and thus, included in the $2,500 flat fee.

There is no definitive list of services that courts agree are routine and customary. Most courts agree that counseling a debtor about the various bankruptcy chapters as well as alternatives to bankruptcy is a routine service incorporated within any flat fee. But some courts

---

[10] When a case is converted, counsel should file a new Rule 2016(b) Statement. *See In re Hines,* 147 F.3d 1185 (9th Cir. 1998); *In re Whaley*, 282 B.R. 38 (Bankr. M.D. Fla. 2002)

[11] The Court takes judicial notice that in twenty-nine cases filed by Mott since January 1, 2005, the Rule 2016(b) statements indicate that the compensation to be paid in connection with each Chapter 13 case was $2500.00. On each of these statements, Mott indicated that the compensation was paid for one of two groups of services – either "(a) All conferences with the Debtor; (b) Preparation of Petition and Schedules; (c) Attendance at 341 First Meeting and attendance at reaffirmation and/or confirmation hearings; (d) Preparation of routine motions" or (a) Post-petition conferences with the Debtor; (b)Post-petition communications with creditors; (c) Attendance at 341 First Meeting and attendance at reaffirmation and/or confirmation hearings; (d) Preparation of routine motions."

12

regard defending a motion for relief from the automatic stay as "routine" and other courts do not. I am not inclined to mandate a list of minimum services that must be included in any "no-look" fee without additional input from the local bar regarding market practices. However, the use of a "no-look" fee seems ill-advised without some understanding between the bar and the Chapter 13 Trustee as to what services will be provided for the fee.[12]

In the absence of general agreement as to what normal and customary services should be provided in a Chapter 13 case, it is appropriate for me to determine whether the services that are described in the within application are encompassed in the list of services described in the Rule 2016(b) Statement Mott typically files in Chapter 13 cases (see footnote 11, *supra*). As observed previously, Mott generally agrees to provide one of two similar groups of services in a Chapter 13 case. In some cases she agrees to provide services that include debtor conferences, preparation of the petition and schedules, attendance at creditors' meetings, attendance at reaffirmation and/or confirmation hearings,[13] and preparation of routine motions. Alternatively, in other cases she agrees to provide services that include post-petition debtor conferences, post-petition communications with creditors, attendance at creditors' meetings, attendance at

---

[12]For example, the creation of a "no-look" fee creates an incentive for attorneys to charge the flat fee amount regardless of the services to be performed. Debtors rarely know what is involved in a Chapter 13 case so they are not able to adequately compare the cost of services among practitioners if there is no consensus on what services should be provided in a basic case. By not examining the fee being charged, the Chapter 13 Trustee is indirectly validating this practice. However, the Court recognizes that the Chapter 13 Trustee is concerned about the consequences of permitting this practice and has encouraged the bar to develop a list of minimal services that should be provided in all Chapter 13 cases.

[13]Since this Court does not hold confirmation hearings in Chapter 13 and hearings on reaffirmation agreements are only held in cases in which a debtor is appearing pro se, the Court assumes that the description of this service is a shorthand reference for representing debtors at hearings on objections to plans.

13

reaffirmation and/or confirmation hearings, and preparation of routine motions. Therefore, in her practice these are the services that she views to be customary in a typical Chapter 13 case.

There are nine entries dealing with oral or written communications to Debtors, which the Court considers to fall within the ambit of "all debtor conferences." The Court also regards the preparation of amended schedules to be part of the flat fee. The Statement explicitly provided that preparing for and attending the meeting of creditors was included in the flat fee. Conferences with the Debtors, communication with creditors and amendments to schedules are all within the services described in the Rule 2016(b) Statement. "Preparation of routine motions" is a more amorphous concept. A highly experienced attorney may describe a motion as routine that a novice would find less so. In this case, the motions and answers to motions that Mott was required to draft were documents that routinely occur in many bankruptcy cases, including the motion to avoid Commerce's lien, the response to the objection to exemptions, and the answer to the motion for relief from the stay. Even after the case was converted, the Court finds that most of the services rendered, except those related to the litigation of the motion to avoid Commerce Bank's lien, are included within the services described in either formulation of the Rule 2016(b) Statement used by Mott.

Many of the services rendered by Mott after the filing of the petition and before the case was converted to Chapter 13 are specifically described in the Rule 2016(b) Statement. During this period Mott incurred $5,451.50 in fees. Of that amount, $2,426.50 was incurred in the performance of tasks specifically included in Rule 2016(b) Statement filed at the commencement of the case or were so closely related (such as the review of the docket) that they should be regarded as being included in the flat fee. All of the time entries for services rendered that were

14

beyond the scope of the Rule 2016(b) Statement were related to litigation involving Commerce's claim. These entries will be discussed as part of the lodestar analysis below.

    2.  Lodestar method for non-routine services

  Although a flat fee is intended to compensate an attorney for typical Chapter 13 legal services, situations do arise in which extraordinary services are required. "[B]ankruptcy courts should divide services into two categories: work that is standard or normal and customary in a chapter 13 case and work that falls outside of this standard." *Szymczak*, 246 B.R. at 781. By filing an application for compensation for services not encompassed within the Rule 2016(b) Statement, Mott is seeking compensation for services that she asserts were necessary and reasonable, but not customary. The Court must identify the services that are beyond the scope of the Rule 2016(b) Statement, and for those that are outside its parameters, determine whether the services rendered were necessary and whether the time spent on the tasks and the hourly rate charged for the services are reasonable.

  When calculating the number of hours that are reasonably spent on a task for purposes of making an attorney's fee award, a bankruptcy court may look to its own familiarity with a case, its experience with that case, and its experience generally, as well as to the evidentiary submissions and arguments of the parties. *In re Kelsey*, 2002 WL 188568 (Bankr. D. Vt.); *In re Thorn,* 192 B.R. 52 (Bankr. N.D.N.Y. 1995). "In order to support a fee application, a time itemization must list each activity, its date, the attorney who performed the work, a description of the nature and substance of the work performed, and the time spent on the work." *In re Fry*, 271 B.R. 596, 602 (Bankr. C.D. Ill. 2001). The attorney's time entries for telephone calls, conferences, and letters must state the purpose or nature of the service and the names of the

persons involved. *In re Chellino*, 209 B.R. 106, 111 (Bankr. C.D. Ill. 1996) The purpose of requiring that professional fee applicants in bankruptcy cases identify subject matter of meetings, phone calls and the like is to protect the bankruptcy estate. *In re American Metallurgical Products Co., Inc.* 228 B.R. 146, 149 (Bankr. W.D. Pa. 1998) *quoting Busy Beaver,* 19 F.3d at 844.

With all of these considerations in mind, I will examine the fee application filed by Mott to determine what fees were beyond the scope of the services to be provided as stated in her typical Rule 2016(b) Statement and then further determine whether the fees requested were necessary and reasonable. A cursory review shows that the application is adequately supported by detailed time entries. The date and amount of time spent are duly listed, as well as the name of the attorney who performed the work. Where the services listed are telephone calls, conferences or letters, the particular pleading or matter at issue is also duly noted. In all but a few entries, discrete tasks are listed separately and not lumped together so the reasonableness of time expenditures can be assessed. In short, generally, Commerce cannot fault Mott for the substance of the time entries. [14]

---

[14]Except for one entry (dated January 31, 2005 in which Mott charged for .3 hours for a phone call with counsel for Commerce), Commerce does not aver that the fee application falsely states the amount of time that was spent on any given activity on any given day. As to that single entry, the Court notes that Mott is an experienced and well-respected bankruptcy practitioner. In the absence of any evidence about such entry other than an estimate by Commerce's counsel that the call lasted only .1 hours, the Court finds that Mott's expertise and reputation militate against a conclusion that this particular time entry was falsified or that any other time entries were exaggerated.

16

The Court finds that the dispute with Commerce over the status of its lien required Mott to expend time that was routine, but also required services beyond those demanded in garden-variety Chapter 13 cases. Some of the expenditures of time were self-inflicted because counsel did not take the prudent step of asking her client to provide a copy of the mobile home title or perform a lien check before the case was filed. Nevertheless, Commerce aggressively pursued its objections to Debtors' exemptions, and its motion for relief from the stay required Mott to perform services that exceeded those necessary in a routine case.

In considering the services rendered related to Commerce's claims, the Court included all debtor conferences related to these claims to be within the flat fee. Responding to the objections of the Chapter 13 Trustee to the plan and to the Debtors' exemptions also were determined to be routine. The Court considered the answer to Commerce's motion for relief, while not a "motion" as described in Mott's typical scope of services, was a routine response to a routine motion. Further the Court also considered the preparation of an objection to a proof of claim and the response to the objection to the plan to be routine and also within the scope of the services to be provided under the flat fee. However, to the extent that these matters were litigated and required hearings and the submission of briefs, the Court finds the services were not routine and, therefore, were outside the scope of the flat fee.

In examining fees outside the flat fee and subject to the lodestar analysis, the Court also finds that some of the time entries seemed excessive – for example, the entry of .3 hours ($125.00) to review an entry of appearance; the entry of .3 hours ($55.50) to review an order granting an extension of time to file a brief; two entries with a total of .7 hours ($129.50) to review correspondence regarding the filing of briefs. In particular, the Court finds that the

17

request for compensation of $999.00 for the preparation and defense of the fee application is excessive. The Court will allow counsel a total of $300 for services related to the preparation and defense of the application. After deducting the amounts being requested for normal and routine services, which should be credited against the flat fee, and eliminating amounts charged for services that were not reasonable or necessary, the Court finds that Mott is entitled to receive compensation of $4,990.50 under the lodestar calculation.

## Conclusion

For the reasons stated above, the Court concludes that Mott is entitled to a total fee allowance in the amount of $7,490.50 plus $24.20 for expenses. The amount of this award incorporates $2,500 for normal and customary services and $4,990.50 for reasonable and necessary services provided beyond the scope of the services routinely provided by Mott in a typical Chapter 13 case. An appropriate order will be entered.

BY THE COURT,

Mary D. France
Bankruptcy Judge

Date: August 29, 2005

*This electronic opinion is signed and filed on the same date.*